UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| FREDDIE J. COOK and <br> BILL H. COOK, <br><br>     Plaintiffs/Counter-defendants, <br><br> v. <br><br> MARK HUGHES, Individually and as <br> Representative and Administrator of the <br> Estate of ROBYN McCRONE <br><br>     Defendant/Counter-plaintiff, <br><br> and <br><br> JOSEPH HATCHCOCK, <br><br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No.: 3:05-CV-439 <br> ) (GUYTON) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 43]. Erie Insurance Group ("Erie"), the Plaintiffs' insurer, has filed a Motion for Summary Judgment [Doc. 45] in which they claim that there are no genuine issues of material fact and Erie is entitled to judgment as a matter of law. Erie argues that GEICO Insurance Company ("GEICO"), as the liability insurance carrier for Defendant Robyn McCrone ("Ms. McCrone"), deceased, is obligated to increase the limits of the policy Ms. McCrone purchased in Florida to equal the minimum coverage limits required by Tennessee law. GEICO contends that it is not required to increase the coverage limits in the Florida insurance policy to the minimum limits set forth in the Tennessee Financial Responsibility Act. [Doc. 48].

## I. Facts

The parties have stipulated to the following pertinent facts:

> 1. An automobile/motorcycle(s) collision occurred on September 25, 2004 on the Cherohola Skyway in Tellico Plains, Monroe County, Tennessee. The collision occurred between a car owned by Freddie Jane Cook being driven by Bill H. Cook and a motorcycle driven by Robyn McCrone and a second motorcycle driven by Joseph Hathcock. Freddie Jane Cook was a guest passenger in the car. The car and the motorcycles were traveling in opposite directions on the Cherohola Skyway. The collision resulted in the death of Robyn McCrone and injury to Joseph Hathcock. Bill H. Cook and Freddie Jane Cook sued the Estate of Robyn McCrone and Joseph Hathcock for injuries they sustained in the accident.
>
> 2. The motorcycle operated by Robyn McCrone was insured by a liability policy issued by GEICO. The GEICO liability policy was issued in the State of Florida. The liability limits as stated in the policy are $10,000 per person for bodily injury; $20,000 for bodily injuries to any number of persons per accident. The GEICO insurance policy is primary in reference to the Cooks' claims for damages.
>
> 3. The motorcycle operated by Joseph Hathcock was insured by a liability policy issued by State Farm Mutual Insurance Company (State Farm).
>
> 4. The Cook automobile was insured by Erie Insurance Group. There is underinsured motorist (UIM) coverage applicable to the Cooks' claims for damages from Erie Insurance Group. The UIM limits under the Cook policy issued by Erie Insurance Group is $100,000 per person for bodily injury; $300,000 for bodily injuries to any number of persons per accident.
>
> 5. The liability coverage stemming from the GEICO/McCrone policy is primary in reference to the Cooks' claims for damages. Erie's underinsured motorist (UIM) coverage is secondary to GEICO's liability coverage.

[Doc. 47].

The parties also stipulated that the GEICO policy provides the primary liability coverage for the personal injury claims of Freddie Jane and Bill H. Cook ("the Cooks"), and Erie's underinsured motorist (UIM) coverage provides secondary liability coverage for the Cooks' claims. The parties have agreed to the entry of a judgment awarding $80,000 in damages to Freddie Jane Cook and $45,000 to Bill Cook, upon the determination of the legal issues addressed herein. [Doc. 41]. These settlement amounts are to be funded by three insurers: GEICO, as liability insurer for Ms. McCrone; Erie, as UIM insurer for the Cooks; and State Farm Insurance Company ("State Farm"), as liability insurer for Joseph Hatchcock.

The only dispute that remains concerns the amount of the settlement that GEICO will pay as the primary liability insurer. The GEICO policy has stated liability limits of $10,000 per person for bodily injury, and $20,000 per accident for bodily injury. The policy's "Out-of-State Coverage" provision is at the center of Erie and GEICO's dispute. The provision is as follows:

> When this policy applies to the operation of a **motorcycle** outside of **your** state, **we** agree to increase your coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced to the extent that **you** are protected by another **motorcycle** insurance policy. No person can be paid more than once for any item of loss.

GEICO policy form CRU-21 (7-96) at 4 (emphasis in original).

## II.     Standard of Review

Granting of a motion for summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing there is no genuine issue of material fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986). The court must

3

view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

The Court must determine whether sufficient evidence has been presented to make the issue of fact a proper jury question, but the Court is not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Id. at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial–in other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

### III.  Positions of the Parties

In its motion, Erie argues that the "Out-of-State Coverage" provision in the GEICO policy automatically increases the policy's liability limits to comply with Tennessee law. Erie claims that once Ms. McCrone was involved in the motor vehicle accident in Tennessee, she was required by law to comply with the Tennessee Financial Responsibility Act, Tenn. Code Ann. § 55-12-101, et seq. Because the Tennessee Financial Responsibility Act requires proof of financial responsibility in the amount of $25,000 for bodily injury to a single person, and $50,000 for bodily injury to or death of two or more persons in any one accident, Erie contends that the GEICO policy limits were automatically elevated to $25,000 for bodily injury to a single person, and $50,000 for bodily injury to or death of two or more persons in any one accident. GEICO counters that the liability limits

4

remain set at $10,000 and $20,000, because the liability policy was never certified with the State of Tennessee as establishing the financial responsibility of Ms. McCrone.

Thus, the issue before the Court is whether the facts of this case trigger application of the "Out-of-State Coverage" provision in the GEICO policy, thereby raising the policy liability levels.

**IV.    Analysis**

This is a diversity personal injury action in which the plaintiffs seek damages arising from an automobile accident. Because jurisdiction in this case is based upon the diversity of the parties, see 18 U.S.C. § 1332, the Court must apply the law of the forum state. Himmel v. Ford Motor Co., 342 F.3d 593, 598 (6th Cir. 2003). Thus, the substantive law of Tennessee applies. Tennessee follows the rule of *lex loci contractus*, which provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent contrary intent. Vantage Tech, LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999); Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973). Therefore, Florida law regarding contract construction will be applied to the GEICO policy.

Under Florida law, an insurance contract is to be construed in accordance with the plain language of the policy. Siegle v. Progressive Consumers Ins. Co., 819 So. 2d 732, 735 (Fla. 2002). The policy in question plainly states that coverage will be increased "to the extent required of out-of-state motorists by local law." GEICO policy form CRU-21 (7-96) at 4. To determine, the requirements of local law the Court must examine the applicable Tennessee statutes and case law.

In Burress v. Sanders, 31 S.W.3d 259 (Tenn. Ct. App. 2000), the Tennessee Court of Appeals addressed a situation similar to the present case. In Burress, an accident victim's underinsured motorist carrier filed a third-party action against the foreign automobile liability insurer to increase

5

Case 3:05-cv-00439-HBG   Document 49   Filed 01/08/09   Page 5 of 9   PageID #: 54

the policy's limits to the minimum required under Tennessee law. The Court of Appeals affirmed the lower court's entry of summary judgment against the liability insurer. Judge Koch,[1] writing on behalf on the court, included an excellent discussion of the role of the Tennessee Financial Responsibility Act. In pertinent part, he explained:

> An accident-free motorist "is at liberty to own and operate a motor vehicle without any insurance coverage or with as little insurance coverage as desired." McManus v. State Farm Mut. Auto. Ins. Co., 225 Tenn. at 109, 463 S.W.2d at 703. Requiring proof of financial responsibility comes into play only after a motorist has been involved in an accident resulting in death, personal injury, or property damage in excess of four hundred dollars. See Tenn. Code Ann. § 55-12-104(a). These motorists must report the accident to the Commissioner of Safety.
>
> If the Commissioner later determines that there exists a reasonable possibility that the motorist who reported the accident will be ordered to pay damages, Tenn. Code Ann. § 55-12-105(a) (1998) empowers the Commissioner to revoke the license and registration of resident motorists or to revoke the driving privileges of non-resident motorists. To avoid revocation, a motorist must prove financial responsibility. See Tenn. Code Ann. § 55-12-105(a). Most commonly, this provision requires the motorist to demonstrate that he or she has the present financial ability to satisfy any judgment arising out of the car accident. This is sometimes referred to as the "present ability" requirement. See The Tennessee Motor Vehicle Financial Responsibility Act, 21 Tenn. L. Rev. at 343-44.
>
> There is a second, related circumstance in which a motorist will be required to demonstrate financial responsibility. A motorist whose driving privileges have been revoked under Tenn. Code Ann. § 55-12-105(a) may reinstate his or her license, registration, and driving privileges only by meeting the requirements of Tenn. Code Ann. § 55-12-108(a) (1998) and by presenting proof of financial responsibility. See Tenn. Code Ann. §§ 55-12-108(a), -118(c). By requiring proof of financial responsibility before restoring a motorist's driving privileges, the statute requires the motorist to demonstrate that henceforth he or she will be able to satisfy any

---

[1] Now Justice Koch of the Tennessee Supreme Court.

> damage claims arising out of owning and operating an automobile. See 1 Alan I. Widiss, Uninsured and Underinsured Motorist Insurance § 1.3 (rev. 2d ed.1999); see generally House v. O'Grady, 35 Ohio Misc. 20, 299 N.E.2d 706, 707-08 (Ohio C.P.1973) (holding that driver's license may be suspended when driver has not established future ability to pay for potential liability). This requirement is sometimes referred to as the "future ability" requirement. See The Tennessee Motor Vehicle Financial Responsibility Act, 21 Tenn. L. Rev. at 344-45.

Burress, 31 S.W.3d at 263. The court noted that the Commissioner had not revoked the defendant's driving privileges in Tennessee, and therefore, the case involved the defendant's present ability to prove financial responsibility to forestall having his driving privileges revoked and did not involve reinstating privileges. The court explained:

> Tennessee's financial responsibility statutes provide four ways for a motorist to demonstrate his or her financial responsibility. A motorist may file notarized releases executed by all persons who filed a claim stemming from the accident. See Tenn. Code Ann. § 55-12-105(b)(4). Short of obtaining releases, a motorist may demonstrate financial responsibility three other ways. First, the motorist may file with the Commissioner written proof that he or she has insurance coverage. See Tenn. Code Ann. § 55-12-105(b)(1). Second, the motorist may execute and file a bond with the Commissioner. See Tenn. Code Ann. § 55-12-105(b)(3). Third, the motorist may file a cash deposit with the Commissioner. See Tenn. Code Ann. § 55-12-105(b)(2).
>
> Motorists seeking to demonstrate financial responsibility by proving that they are insured may submit a written certificate of insurance. See Tenn. Code Ann. §§ 55-12-119 to -121, and -137 (1998). Filing an insurance policy is sometimes referred to as "certifying" the policy. See, e.g., Tenn. Code Ann. §§ 55-12-102(7), -123 (1998). For states that have adopted financial responsibility statutes, certifying an insurance policy satisfies the requirement that the motorist demonstrate financial responsibility. See, e.g., Wisdom v. Stonewall Ins. Co., 139 Ill. App.3d 1082, 94 Ill. Dec. 412, 487 N.E.2d 1289, 1291-92 (1986); Dairyland Ins. Co. v. Finch, 32 Ohio St.3d 360, 513 N.E.2d 1324, 1326 (1987) overruled on other grounds by State Farm Auto. Ins. Co. v. Alexander, 62 Ohio St.3d 397, 583 N.E.2d 309, 312 (1992).

7

Id. at 264 (footnotes omitted). While Burress provides an overview of the law applicable to the present case, the facts in Burress are distinguishable from the facts currently before the Court, because the insurance policy in Burress had been certified with the Department of Safety.

In the present case, Erie claims that once Ms. McCrone was involved in the motor vehicle accident in Tennessee, she was required to comply with the Tennessee Financial Responsibility Act, Tenn. Code Ann. § 55-12-101, et seq. Erie argues that compliance with the Act required additional liability coverage. While it is true that immediately after the accident Ms. McCrone was required to comply with the Financial Responsibility Act, compliance with the act did not necessarily entail presenting an insurance policy to the Commissioner. From the moment after the crash, Ms. McCrone was required to file an accident report, and if, and only if, the Commissioner found that Ms. McCrone was likely to pay damages, she was required to provide proof of financial responsibility. Assuming Ms. McCrone, in fact, had been ordered by the Commissioner to provide proof of financial responsibility, she would have had four options available to her: a waiver by the parties, certification of an insurance policy, posting a bond, or depositing a requisite amount of cash. See Burress, 31 S.W.3d at 264. Ms. McCrone could have satisfied her obligation to demonstrate financial responsibility via any of these options.

Based on the foregoing, the Court finds that the purpose of the Tennessee Financial Responsibility Act is to govern driving privileges, and the maintenance of those privileges after an accident, not liability coverage limits on out-of-state policies. Moreover, the "Out-of-State Coverage" provision and the "Financial Responsibility Required" provision of the GEICO policy are separate provisions, the latter being applicable only, "If we [GEICO] certify this policy as proof of financial responsibility for the future under any financial responsibility law . . . ." GEICO policy

form CRU-21 (7-96) at 4. There is no dispute that the GEICO policy was not "certified" by anyone in this case. On the other hand, the "Out-of-State Coverage" provision is unambiguous and clearly applicable to this case. Based upon the evidence before the Court, the Court concludes that GEICO was required to increase the liability limits contained in its policy to the minimum limits required under Tennessee law.

Accordingly, the Court finds that there is no issue of material fact remaining in this case, and that the moving party, Erie, is entitled to judgment as a matter of law. Based upon the evidence before the Court, the Court concludes that GEICO was required to increase the liability limits contained in its policy to the minimum limits required under Tennessee law.

## V. CONCLUSION

Based on the foregoing, the Court finds that the Defendant's Motion for Summary Judgment **[Doc. 45]** is well-taken, and accordingly, the motion is **GRANTED**. The Court will prepare the appropriate judgment.

**IT IS SO ORDERED**.

ENTER:

s/ H. Bruce Guyton
United States Magistrate Judge